## City of Newport v. Merkel Brothers Company.

(Decided December 19, 1913).

## Appeal from Campbell Circuit Court.

1.  Municipal Corporations—Motor Vehicle Ordinance—Invalid When in Conflict with Statute of State.—An ordinance of the City of Newport which requires all persons and corporations using any vehicle on the streets of the city to obtain from the city clerk and pay, respectively, therefor, an annual license, is invalid, as to a non-resident owner of a motor vehicle using same in the city of Newport, who has complied with the law of the State of his residence requiring the payment thereon of such license tax therein, provided: such law likewise exempts from the payment of such license tax in that State owners of motor vehicles residing in Kentucky who under a similar law have paid such license tax in the latter State.

2.  Municipal Corporations—Ordinances—When Repealed by Legislative Act.—An act of the General Assembly of Kentucky, approved March 23, 1910, entitled "An act defining motor vehicles, providing for the registration of same and uniform rules regulating the use and speed thereof," Section 7 of which provides that certain provisions of the act requiring registration of motor vehicles and the payment of a license tax thereon by the owners, shall not apply to any motor vehicle owned by a non-resident of this State, provided: such non-resident owner shall have registered and paid the license tax on same under a law of his own State, etc., repealed so much of the ordinance of the city of Newport as seeks to impose a license tax upon non-resident motor vehicle owners of the class indicated, notwithstanding the use of their machines on the streets of the city; nor is section 7 of the act violative of section 60 Constitution.

3.  Municipal Corporations—Police Power—Exercise of by the Legislature—Comity of the State.—The act in question being but a valid exercise by the Legislature of the police power of the State, its exemption of non-resident owners of motor vehicles who have complied with a similar law of their own States, does not discriminate against resident owners of such vehicles in this State; and especially is this true, where, as admitted in this case, the law of the State of the non-resident motor vehicle owners residence, affords the same exemption to owners of such motor vehicles residing in this State, who have complied with its laws. In such case the doctrine of comity of the States gives force to the exemption allowed.

OTTO WOLFF for appellant.

R. C. SIMMONS, GORDON MORRILL & GUNTER for appellee.

Opinion of the Court by Judge Settle—Affirming.

This action was brought February 19, 1913, in the Campbell Circuit Court by appellee, Merkel Brothers Company, a corporation under the laws of the State of Ohio, against the City of Newport, a municipal corporation of the second class, and William C. Buten, its police judge, to have declared invalid certain provisions of an ordinance of the city of Newport, known as the Vehicle License Ordinance, in so far as its provisions were attempted to be applied to appellee; and to prevent by injunction threatened prosecutions of appellee's agents for its failure to obtain and pay a license demanded by appellant for using on its streets two motor vehicles, or motor trucks, propelled by gasoline motive power.

It appears from the petition that the city of Newport, through its general council, duly passed an ordinance, which was approved by its mayor June 4, 1909, containing, among other provisions, the following: "All persons, companies and corporations using any vehicle on the streets of the city of Newport be and are required to obtain from the city clerk and pay respectively therefor an annual license fee in the amount as follows, to-wit: * * * For each passenger automobile—$5.00; for each freight automobile (one ton capacity or less)—$5.00; for each freight automobile (over one ton capacity)—$10.00"; that at and prior to the institution of the action appellee had its domicile and principal office in the city of Cincinnati, Ohio, and was engaged in the business of manufacturing and dealing in plumbing supplies, in making deliveries of which to its customers located in Newport, appellee used two motor vehicles, or motor trucks, propelled by gasoline motive power; that the motor vehicle law of Ohio, the State of appellee's domicile, requires that every owner of a motor vehicle, or vehicles, operated or driven upon the public highways of that State shall, annually, before the first day of January in each year, for each motor vehicle owned or acquired by him, apply for registration and register such motor vehicle and pay the license fee exacted therefor; and, in addition, placard such motor vehicle with an identification mark, bearing the number assigned to such motor vehicle, the name of the State and the figure of the calendar year for which the number was issued; and that by the provisions of such law, non-resident owners of motor vehicles were exempt from registration in the State of Ohio, provided they had complied with the pro-

visions of the law in regard to the registration of motor vehicles in the State of their residence.

It further appears that appellee had complied with the laws of Ohio with reference to the registration and licensing of motor vehicles; and when they were used in the city of Newport, it had, at all times, conspicuously displayed upon each the identification mark required by the laws of Ohio and those of Kentucky respecting the operation of motor vehicles; but, nothwithstanding the fact, the appellant city was proposing to arrest and try, for the violation of the vehicle ordinance referred to, the agents of appellee engaged in operating such motor vehicles in the city of Newport in the prosecution of appellee's business.

A demurrer to the petition was filed by appellant, and overruled by the circuit court, and appellant and its co-defendant, the police judge, declining to plead further, the case was submitted. The trial court, being of opinion that the ordinance in question, insofar as it requires an automobile license for motor vehicles owned by non-residents who have complied with the law of their domicile in procuring a license, registering and numbering their vehicle, is in conflict with and superseded by the motor vehicle law of Kentucky of 1910, held it to be inoperative and void, and entered judgment enjoining the city of Newport and its officers from enforcing the ordinance against the appellee. The city appeals.

Appellant seeks a reversal upon the ground that the act of the General Assembly of Kentucky, approved March 23, 1910, entitled "An Act defining motor vehicles, providing for the registration of the same and uniform rules regulating the use and speed thereof," known as the "Motor Vehicle Law," is unconstitutional upon several grounds, but only such of these as present questions upon which appellant is entitled to rely will be considered.

The law is well settled that one who has no interest in the subject of a statute and is not injuriously affected by its provisions, cannot attack its validity. Burnside v. Lincoln County Court, 86 Ky., 423. The record here presents for our decision but one controverted question that can properly be said to affect the rights of the parties. All others are purely academic. This single question is: Does section seven of the act under consideration, which exempts any motor vehicle owned by a non-resident of the State from the provisions of sections 2,

3, 4, and 5 of the act, where the owner has complied with the laws of his own State requiring the registration of motor vehicles, payment of license tax, etc., discriminate against the citizens of this State, or otherwise violate any provision of the Constitution? Briefly stated, sections 1, 2, 3, 4 and 5 of the act define motor vehicles, require payment of a graduated license tax thereon, their registration by the owners, the assignment to each of a distinctive number, and the issuance of a certificate of registration to the owner; the issuance of an identification seal; the keeping of a record of registration; require owners of motor vehicles to display, in a conspicuous place thereon, the identification seal and number and to keep lights thereon during the hours of the night; provide how manufacturers and dealers in motor vehicles shall register and use their vehicles; classifies motor vehicles; require renewal of registration upon change of ownership of a motor vehicle; provide for safety appliances upon motor vehicles; regulate their speed upon the highways; impose certain duties upon operators of motor vehicles when horses in use are, or are about to become, frightened thereat; require the display of but one identification seal, and forbid the exclusion from use of the public highways by owners of motor vehicles. Other sections permit municipal corporations to make reasonable rules regulating the speed of such vehicles and their use upon its public ways; provide that no right to redress for injuries resulting from the negligent operation of motor vehicles shall be curtailed or abridged; make disposition of the registration fees; forbid the use of a fictitious number on motor vehicles; and impose penalties for violations of the provisions of the act.

Section two contains a proviso, "That nothing in this act shall be construed to prevent cities of the first, second and third classes from levying and collecting license taxes from resident owners of motor vehicles for city purposes, by ordinances properly passed."

Section seven to which reference has already been made provides: "The provisions of sections two, three, four, and five of this act shall not apply to any motor vehicle owned by non-residents of this State, provided the owner thereof has complied with any law requiring the registration of motor vehicles, or the names of the owners thereof, in force in the State, city, territory or Federal district of his residence, provided the registration number show-

ing the initial or abbreviation of the name of such State, city, territory or Federal district shall be displayed on such vehicle substantially as in section three of this act provided. Provided, that nothing in this section shall be so construed as · to exempt non-resident owners and drivers of automobiles from complying with the first part of section four of this act requiring the carrying of lighted lamps as in said section provided.'' Manifestly, this statute was enacted by virtue of the police power of the State and is designed to regulate the use of motor vehicles. Properly speaking, it is not a revenue measure, though incidentally revenue is derived therefrom. Undoubtedly, the State has the right under the police power to legislate in the interest of the public health, public safety or public morals. There can be no question, therefore, of the right of the Legislature, in the exercise of the police power, to regulate the driving of automobiles and motorcycles on the public ways of the Commonwealth, and while the city of Newport has the power from the State to tax and may, under the police power, by ordinance, reasonably regulate the use that may be made of its streets by automobiles and other vehicles, either or both these powers are subject to any statute of the State in force, and may be withdrawn from it by the Legislature of the State. Indeed, it may be said to be a recognized· doctrine that the power of the Legislature with respect to police regulation, cannot be delegated by that body so as to preclude the resumption of the power by it. This rule is stated in 25 Cyc., 501, as follows: ''The Legislature has the undoubted right by a later act to divest a municipal corporation of its right to impose license taxes and resume the exercise of the power itself.'' Brazier v. Philadelphia, 215 Pa. St., 297; Wilke v. Chicago, 180 Ill., 444; Black Constitutional Law, page 279.. So, while the appellant city had the right to adopt the ordinance under which it attempts to collect of the owners of automobiles and motor trucks, the license fee thereby imposed for the use of the streets by such vehicles; it is equally true that the Legislature had the power to withdraw from it the power to impose or collect such license tax of non-resident owners of such vehicles, where the latter pays such a tax under a law of their own State.

As the act of 1910 provides that no owner of motor vehicles is to be ''required to comply with other provisions or conditions as to use of such motor vehicles,

except as in this act provided" and, in addition, by section seven thereof, exempts non-resident owners of motor vehicles, who have complied with a similar law of their own State with reference to such vehicles, from the payment of a license tax in this State, there can be no doubt as to the invalidity of the ordinance, in so far as any right thereunder to collect the license tax of appellee, was concerned. And this is true, whether the ordinance was in existence at the time of the passage of the act or was thereafter adopted by the city council. City of Buffalo v. Lewis, 192 N. Y., 193.

We are further of opinion that the exemption by the act of non-resident owners of motor vehicles from registration and the payment of the license fee requirement is not a violation of any provision of the Constitution of this State. Although this question does not seem to have been directly passed upon in this jurisdiction, it has been decided by several of the courts of last resort in other States. In Fort Smith v. Scruggs, 70 Ark., 549, the question was as to the validity of a statute authorizing the imposition, by a municipal corporation, upon residents, of a tax for keeping and using a vehicle on its streets, objection to which was made on the ground that the act did not include non-residents. In disposing of this question, the court said: "It is doubtless true that the Legislature could not arbitrarily select certain citizens upon whom to impose the tax, while exempting others in like situation. But the rule of equality only requires that the tax shall be collected impartially of all persons in similar circumstances; and this statute applies to all persons of the class taxed. As a class, residents of the city use the streets more, and are more benefited by having them kept in good repair, than those who do not live in the city. It is true that non-residents of the city also use the streets with their wagons and other vehicles, and it may be true that certain of them use the streets as much as, or more than, certain of the residents of the city, but, as a class, they do not use the streets as much as residents of the city, and this furnishes a reasonable basis for the distinction made in the act between the two classes. The requirement of the statute that the tax must be imposed on residents of the city only is but an adoption by the Legislature of the common policy of making each community keep up its own highways. This does not discriminate unjustly in favor of those who live beyond the city

limits, for they have to keep other highways which the people of the city may in turn use free of charge. For this reason, we think that it was within the discretionary powers of the Legislature to make this distinction, and that it does not invalidate the act. After full consideration of the questions presented, we are of opinion that the enactment of this statute was a valid exercise of legislative power. With the wisdom or expediency of it, as before stated, we have nothing to do. If it should prove to be unsatisfactory there is still a remedy. The Legislature can repeal the statute or the city council may repeal the ordinance but the courts cannot do so.'' Kersey v. Terre Haute, 101 Ind., 174.

It is not to be overlooked that the discriminatory feature pertaining to the ordinance passed on by the court in Fort Smith v. Scruggs, *supra,* was stronger than in this case, for it does not appear that there was any exemption of non-residents from the payment of the tax imposed upon the ground that they were subject to a similar tax at the place of their residence. In the instant case, however, it is admitted that appellee registered his motor vehicles and paid the license tax on each of them in Ohio, in compliance with a statute of that State. It would seem, therefore, that the doctrine of comity of the States gives force to its right to the exemption afforded by section seven of the act in question.

The doctrine of comity of the States is generally recognized by the courts of the land, and a very interesting discussion of it may be found in Thompson v. Waters, 25 Mich., 214. In the opinion, it is said:

''And it is not, then, the comity of the courts, but that of the State, and the question is upon the adoption or qualified adoption in this State, of the laws of Indiana, it follows that the power of determining the question whether, and how far, or with what modification, or upon what conditions, the laws of that State, or any rights dependent upon them, shall be recognized here, belongs to the legislative or law making power of this State, and that the judiciary, whose province is only to declare, and not to make, the law, must be guided in their decision by the principle and policy adopted by the Legislature of this State in reference to this question. And in ascertaining what this legislative policy is, we are to be guided not only by such express provisions as they have chosen to make, and the natural implication from them, but also by their silence, which may furnish as clear an

indication of what that policy was intended to be, as can be drawn from what they have expressed; since, if they made no provision at all upon the particular subject, or branch of the subject, or question involved, it may reasonably be inferred that they intended to adopt, and left to the courts to apply, the generally received principles of comity, and, to that extent, to adopt the foreign, or rather to recognize the rights dependent upon such laws; and if they have chosen to leave the matter without any legislative provision, the case must be a very clear one indeed, which would authorize the courts to refuse such recognition, on the ground that it would be prejudicial to the interests of the State; since the Legislators are the proper representatives of the public interest, and, having the exclusive power to determine what shall be the public policy of the State, if they have chosen to make no enactment upon the subject, it is natural to infer they omitted to do so because they thought it unnecessary, and that the generally recognized principles would be sufficient for such cases. None of the foregoing principles have been seriously questioned in this case, so far as they relate to the power and capacity of corporations, created in one State, to make and enforce contracts, and to acquire personal property in another.''

While, as at present advised, this court does not commit itself to the application of the doctrine of comity as made in the case *supra*, it gives the doctrine its approval as applied by section seven of the act under consideration, as it rests the exemption allowed to non-residents upon the condition that they comply with a similar law of their own State; and it so happens in the instant case that Ohio, the State of appellee's residence, admittedly has a statute with respect to motor vehicles similar to that of this State, containing the same exemption to non-residents.

The act before us does not, in so far as its application to any material question here presented is concerned, violate any provision of the Constitution; and being of opinion that it supersedes and repeals so much of the vehicle ordinance of the appellant city as attempts to impose a license tax upon owners of motor vehicles other than residents of that city, we approve the conclusions expressed in the judgment rendered by the circuit court; wherefore, it is affirmed. Whole court sitting.